# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARY NYAMEKYE**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:15cv1219 |
| | ) | **Electronic Filing** |
| **PENN HILLS SCHOOL DISTRICT**, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

September 13, 2017

## I. INTRODUCTION

Plaintiff, Mary Nyamekye ("Mary" or "Plaintiff") filed a four (4) count Amended Complaint alleging racial discrimination in violation of the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 ("§ 1981"), age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* (the "ADEA")[1], national origin discrimination and retaliation against Defendant Penn Hills School District (the "District"), based upon the District's failure to hire her as a fulltime custodian. The District has filed a motion for summary judgment, Mary has responded and the motion is now before the Court.

## II. STATEMENT OF THE CASE

Mary was born and raised in Ghana, came to the United States in 1998 and became a United States citizen about three years thereafter. Mary's husband, Lawrence Nyamekye ("Lawrence") is also from Ghana and became a United States citizen in 1997.

---
[1] Plaintiff's ADEA claim was dismissed by Order of this Court on April 19, 2016.

Defendant's Concise Statement of Material Facts ("Def. CSMF") ¶¶ 4 & 5. Lawrence began work with the District as a substitute custodian in 2000 and became employed as a full-time custodian in 2004. Def. CSMF ¶ 10. Mary was initially hired by Penn Hills in 2007 to work part-time in the transportation department. Def. CSMF ¶¶ 6 & 7. She was employed for two (2) years before she was laid off. Def. CSMF ¶ 7.

Having learned from Lawrence that there was a position as substitute custodian available in the District, Mary applied for the job and was hired on November 22, 2011. Def. CSMF ¶¶ 8 & 9. As a substitute custodian, Mary worked in three different buildings within the District, and she worked from 3:00 p.m. to 11:00 p.m., five (5) days a week, every week. Def. CSMF ¶¶ 11 & 12. As a substitute employee, Mary was not a member of the Union, and was not covered by the Collective Bargaining Agreement (the "CBA"). Def. CSMF ¶ 14.

On July 1, 2013, the District entered into a Professional Services Agreement (the "Agreement") with Facilities Management Systems, Inc. ("FMS"). Def. CSMF ¶ 15. Under the Agreement, FMS was granted the exclusive right to manage and operate the District's maintenance and custodial operation, acting in the capacity of an independent contractor. Def. CSMF ¶ 16. Richard Oskin ("Oskin") and William King ("King") were assigned by FMS as Facilities Supervisor and Facilities Manager for the District. Def. CSMF ¶ 17; King Affidavit ¶¶ 4 & 5.

In August, 2014, the District hired five (5) full-time custodians, Donna Clawson ("Clawson"), Dayle Summers ("Summers"), Jim Homze ("Homze"), Sabrina Hutson[2] ("Hutson") and Tracy McKee (McKee"), all of whom had previously been substitute custodians in the District. Def. CSMF ¶¶ 18 & 19. The District hired these custodians based on

---

[2] Hutson is African-American. Def. CSMF ¶ 20.

recommendations from FSM, and all of the newly hired custodians, except McKee, had worked as substitute custodians with the District longer than Mary. Def. CSMF ¶¶ 21 & 22. FSM did not recommend Mary allegedly because there were "complaints" made about her work performance. Def. CSMF ¶¶ 23 & 24; King Aff. ¶¶ 9 & 10.

Mary and Lawrence met with the District's superintendent, Dr. Thomas Washington ("Washington"), Director of Human Resources, Lindsay Pfister ("Pfister"), and King on August 22, 2014, to discuss why McKee was hired despite being behind Mary on the seniority list. Plaintiff Response to Defendant's Concise Statement of Material Facts ("Pl. Resp. CSMF") ¶ 24; Def. CSMF ¶ 25. King explained by reading a one sheet email allegedly from Principal, Eric Kostic ("Kostic") in whiche Kostic alleged that Plaintiff left "paper" on his bathroom floor back in May of 2014, nearly three (3) months earlier. Pl. Resp. CSMF ¶ 24; Lawrence Dep. pp. 99-101; Mary Dep. p. 124. Mary was never informed of the complaint. Pl. Resp. CSMF ¶ 24. Mary was told that Kostic's complaint was the reason she was not hired. *Id.*

In October, 2014, as the result of an arbitration decision, the District hired four additional full-time custodians, Ross Janikas, Thomas Wheeler, Caitlyn Abbott and Clark Crockett, none of whom were employed as substitute custodians with the District. Def. CSMF ¶¶ 30 & 31. The District made the hires based upon recommendations from FMS. Def. CSMF ¶ 32. Again, FMS failed to recommend Mary for one of the positions. Def. CSMF ¶ 33.

Lawrence approached Assistant Superintendent Dr. Nancy Hines ("Dr. Hines") about the District's failure to hire Mary as a full-time custodian. Def. CSMF ¶ 34. Dr. Hines relayed the inquiry to Washington, Pfister and King and was informed that Mary was not hired for a full-time custodial position because she was experiencing work performance issues. Def. CSMF ¶ 35.

On February 1, 2015, Dr. Hines became the District's Acting Superintendent. Def. CSMF ¶ 36. Based on Dr. Hines' recommendation, the District's Board of Directors terminated the Agreement with FMS effective June 30, 2015. Def. CSMF ¶ 37. Around the time she made the recommendation to the Board, Dr. Hines was again approached by Lawrence regarding the District's failure to hire Mary as a full-time custodian. Def. CSMF ¶ 38. Lawrence claimed that his wife was not informed of her job performance issues prior to their meeting in August of 2014, and that Mary was the victim of discrimination because she was not hired for a full-time position in accordance with seniority. Def. CSMF ¶ 39.

Dr. Hines investigated and contends that she found no evidence of discrimination. Def. CSMF ¶ 40. Dr. Hines admits, however, that her investigation uncovered "very limited information" specific to Mary's performance as a substitute custodian. Dr. Hines Aff. ¶ 17. Based on such lack of information, Dr. Hines decided Mary should be given the opportunity to work in a full-time capacity. Dr. Hines Aff. ¶ 18.

Subsequently, an opening for a full-time custodian arose because of a retirement. Def. CSMF ¶ 42. Mary and her husband met with Dr. Hines on April 28, 2015 to discuss the position, and Mary accepted the position. Def. CSMF ¶ 47. Mary was hired by the Board effective May 5, 2015. Def. CSMF ¶ 48.

### III. LEGAL STANDARD FOR SUMMARY JUDGMENT

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment shall be granted when there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law. To support denial of summary judgment, an issue of fact in dispute must be both genuine and material, i.e., one upon which a reasonable fact finder could

base a verdict for the non-moving party and one which is essential to establishing the claim. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. Id. The court's consideration of the facts must be in the light most favorable to the party opposing summary judgment and all reasonable inferences from the facts must be drawn in favor of that party as well. *Whiteland Woods, L.P. v. Township of West Whiteland*, 193 F.3d 177, 180 (3d Cir. 1999), *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir. 1987).

When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P 56(e). Further, the nonmoving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The non-moving party must respond Aby pointing to sufficient cognizable evidence to create material issues of fact concerning every element as to which the non-moving party will bear the burden of proof at trial. *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F. 3d 639, 643 n. 3 (3d Cir. 1998), *quoting Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir. 1994).

## IV. DISCUSSION

### A. Discrimination

Because of the evidentiary difficulties involved in proving discriminatory intent, the Court of Appeals for the Third Circuit has held that summary judgment motions in § 1981 cases are governed by the well-known burden shifting provisions laid down in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) (the "McDonnell Douglas analysis"), and refined in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). *See Chauhan v. M. Alfieri Co.*, 897 F.2d 123, 126-127 (3d Cir. N.J. 1990); *Brown v. J. Kaz, Inc.*, 581 F.3d 175, 181-182 (3d Cir. 2009) (noting that "the substantive elements of a claim under Section 1981 are generally identical to the elements of an employment discrimination claim under Title VII").

Under of Title VII of the Civil Rights Act of 1964 and 1991 ("Title VII"), as amended, it is unlawful for an employer to "discharge an individual, or otherwise to discriminate against an individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex or **national origin**." 42 U.S.C. § 2000e-2(a)(1)(emphasis added). Mary's national origin claim, therefore, will also be analyzed under the burden-shifting framework established in *McDonnell Douglas*. In order to establish a claim under §1981 or Title VII, Mary must first establish a *prima facie* case of discrimination. To do so, she must offer sufficient evidence that: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the adverse employment action was made under circumstances that give rise to an inference of unlawful discrimination. *Rodriguez v. Nat'l R.R. Passenger Corp.*, 532 Fed. Appx. 152, 153 (3d Cir. 2013); *Oguejiofo v. Bank of Tokyo-Mitsubishi UFJ, Ltd.*, 2016 U.S. Dist. LEXIS 128525, 16-17 (D.N.J. Sept. 20, 2016).

Under the McDonnell Douglas analysis, once the employee establishes a *prima facie* case of discrimination, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employer's adverse employment decision. *McDonnell Douglas Corp. v. Green*, 411 U.S. at 802. If the employer makes that showing, the burden of production shifts once again to the employee to establish that the employer's proffered justification for the adverse action is pretextual. *Tex. Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 254-255 (1981). Throughout this burden-shifting exercise, the burden of persuasion remains on the employee. *Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1095 n.4 (3d Cir. 1995) (citing *Tex. Dep't of Comm. Affairs v. Burdine*, 450 U.S. at 253).

The District argues that Mary has failed to establish the fourth element required to establish a *prima facie* claim of discrimination- that the failure to hire her was made under circumstances that give rise to an inference of discrimination. It is undisputed that Mary is an African-American originally born in Ghana, Africa. It is also undisputed that Mary: (1) worked as substitute custodian within the District since November 2011; (2) was passed over for a full-time position in August, 2014, when the District hired five (5) full-time custodians, including a Caucasian women with less seniority than Mary; and (3) was passed over for a full-time position in October, 2014, when the District hired four (4) full-time custodians, all of who were Caucasian and none of whom were employed as substitute custodians with the District. Mary testified that previous hires were all made on the basis of seniority. Viewing the facts in a light most favorable to Mary, and making all inferences therefrom in her favor, the Court finds that she has established a *prima facie* case of discrimination.

The burden of production now shifts to the District to articulate a legitimate, nondiscriminatory reason for failing to hire Mary as a full-time custodian in 2014. *Keller v. Orix*

7

*Credit Alliance, Inc.*, 130 F.3d 1101, 1108 (3d Cir. 1997); *Simpson v. Kay Jewelers*, 142 F.3d at 644 n.5. This burden is "relatively light" and is satisfied if the employer provides evidence, which, if true, would permit a conclusion that it took the adverse employment action for a non-discriminatory reason. *Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994)); *see also Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 302 (3d Cir. 2012) (describing this step as a "minimal burden").

The District contends that Mary was not hired in August or October of 2014, because FMS did not recommend her based upon complaints and concerns regarding Mary's job performance. The burden, therefore, shifts back to Mary to show that the District's articulated reasons for not hiring her as a full-time custodian in 2014 are merely a pretext for racial or national origin discrimination. An employee may demonstrate that her employer's legitimate nondiscriminatory reason is pretextual by submitting evidence that allows a factfinder to either 1) disbelieve or discredit the employer's justification; or 2) believe discrimination was more likely than not a "but for" cause of the adverse employment action. *Abels v. Dish Network Serv., LLC*, 507 F. App'x 179, 183 (3d Cir. 2012) (citing *Fuentes v. Perskie*, 32 F.3d at 764). *See also Gross v. FBL Fin. Servs.*, 557 U.S. 167, 177-178 (2009). Evidence undermining an employer's proffered legitimate reasons must be sufficient to "support an inference that the employer did not act for its stated reasons." *Sempier v. Johnson & Higgins*, 45 F.3d 724, 731 (3d Cir. 1995).

In order to discredit the District's proffered justification under the first prong of *Fuentes*, Mary must present evidence demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies (sic), or contradictions" in the proffered reasons "that a reasonable factfinder could rationally find them unworthy of credence," and ultimately infer that the District did not act for the asserted nondiscriminatory reasons. *Fuentes v. Perskie*, 32 F.3d at 765. To show that an

invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action, "the plaintiff must point to evidence with sufficient probative force that a factfinder could conclude by a preponderance of the evidence that [race] was a motivating or determinative factor in the employment decision." *Simpson v. Kay Jewelers*, 142 F.3d at 644-645 (quoting *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d at 1111). Examples include showing that the employer has previously discriminated against the plaintiff, that the employer has discriminated against members of the plaintiff's protected class or another protected class, or that similarly situated people not within plaintiff's class were treated more favorably. *Id.* at 645 (citing *Fuentes v. Perskie*, 32 F.3d at 765). The question is whether the District was motivated by a discriminatory animus, not whether its decision was wise, shrewd, prudent, or competent. *See Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 531, 533 (3d Cir. 1992); *Villanueva v. Wellesley College*, 930 F.2d 124, 131 (1st Cir.), *cert. denied*, 502 U.S. 861 (1991). *See also Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 332 (3d Cir. 1995) ("[A]n employer may have any reason or no reason for discharging an employee so long as it is not a discriminatory reason."). If Mary's evidence rebutting the District's proffered reason permits a factfinder to conclude that such reason (or reasons) was either a "*post hoc* fabrication" or otherwise did not actually prompt the employment action, then summary judgment is inappropriate. *Fuentes v. Perskie*, 32 F.3d at 764.

      Mary argues that the District's proffered reason is completely devoid of credibility because: (1) neither she nor her husband was given prior notice of her alleged performance problems; and (2) such allegations of poor performance were not true. Moreover, Mary was never disciplined nor was she provided any performance review.

Mary's contention that the allegations about her performance were untrue fails to discredit the District's proffered justification for not hiring her. An employer may use "statements and complaints by co-workers when making a decision to terminate an employee," and "the employee cannot later establish pretext by simply challenging the veracity of such statements." *McNeil v. Greyhound Lines, Inc.*, 69 F. Supp. 3d 513, 524 (E.D. Pa. Nov. 25, 2014) (quoting *McCormick v. Allegheny Valley Sch.*, 2008 U.S. Dist. LEXIS 8533, 2008 WL 355617, at *16 (E.D. Pa. Feb. 4, 2008). "So long as the decision-maker reasonably credited the allegations, an employee's denial is not enough to establish pretext." *Id.* Mary's denial that there were problems with her job performance is, therefore, insufficient to create a genuine issue of material fact. *See Ade v. KidsPeace Corp.*, 401 Fed. Appx. 697, 703 (3d Cir. 2010) (citing *Waggoner v. Garland*, 987 F.2d 1160, 1166 (5th Cir. 1993)) (veracity of underlying charge "largely irrelevant" where employer had "good faith belief" that employee committed offensive behavior).

Mary also contends that the fact that she was never informed of or disciplined for the alleged complaints regarding her job performance is evidence of pretext. The Court disagrees. A plaintiff's mere belief or contention that she was subject to discrimination is not enough to create a dispute of material fact sufficient to survive summary judgment. *Ullrich v. United States Secy. of Veterans Affairs*, 457 Fed. Appx. 132, 136-137 (3d Cir. 2012); *See also Ekhato v. Rite Aid Corp.*, 529 Fed. App'x 152, 156 (3d Cir. 2013) (concluding that the plaintiff's subjective belief about the reason for her termination was insufficient to support a finding of pretext at summary judgment (citations omitted)); *Lexington Ins. Co. v. W. Pa. Hosp.*, 423 F.3d 318, 333 (3d Cir. 2005) (holding that speculation is not sufficient to defeat a motion for summary judgment); *Dellapenna v. Tredyffrin/Easttown Sch. Dist.*, 449 Fed. App'x. 209, 215-216 (3d Cir.

Pa. Oct. 28, 2011) (concluding that plaintiff's conjectures were insufficient to satisfy her burden of pointing to evidence that supported the existence of pretext at summary judgment and noting that mere speculation does not create genuine issues of material fact); *McKnight v. Aimbridge Emple. Serv. Corp.*, 2016 U.S. Dist. LEXIS 126837 *31 (E.D. Pa. Sept. 16, 2016) (Plaintiff's subjective belief that his supervisor was aware of his complaint about discrimination, without more, is insufficient to satisfy his burden of pointing to evidence that could establish pretext).

There is no dispute that Mary was told by Washington at the August 2014 meeting that there were complaints with regard to her job performance and that was the reason she was not hired as a full-time custodian. Whether she was told previously is irrelevant. Even if the District was wrong or mistaken in believing FMS that complaints had been made about Mary's job performance, that is not sufficient to establish pretext. *See Nardella v. Philadelphia Gas Works*, 621 F. App'x 105, 108 (3d Cir. 2015),

Mary also directs this Court to comments made by Oskin and some of her co-workers that she perceived to be discriminatory to her national origin. Mary admitted, however, that when she complained about this conduct to Dr. Hines, the District conducted an investigation, spoke to those people who Mary claimed were treating her inappropriately, and the inappropriate conduct ceased. The District, then, was not part of such alleged discrimination, to the contrary, the District intervened and ended the conduct. Moreover, the alleged conduct is not attributable to a decisionmaker connected with the District's employment decisions and is insufficient to show a discriminatory animus. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989). Stray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight. *Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d at 333 (citing *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d at 545).

11

Mary, therefore, fails to show that the District's articulated reasons for its employment decisions are merely a pretext for racial and/or national origin discrimination. Nor is she able point to evidence in the record which would allow a rationale factfinder to believe discrimination was more likely than not a "but for" cause of the District's employment decisions. Accordingly, the Court finds that Mary's discrimination claims under § 1981 and under Title VII fail as a matter of law.

B. Retaliation

Mary also alleges that the District unlawfully retaliated against her because of her specific complaints of discriminatory treatment. To establish a *prima facie* case of retaliation, Mary must demonstrate that: (1) she engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneous with the protected activity; and (3) a causal link exists between the protected activity and the adverse action. *See Abramson v. William Paterson College of New Jersey*, 260 F.3d 265, 286 (3d Cir. 2001); *Kachmar v. Sungard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1999). A causal link between protected activity and adverse action may be inferred from an unusually suggestive temporal proximity between the two, an intervening pattern of antagonism following the protected conduct, or the proffered evidence examined as a whole. *Id.*

If Mary establishes a *prima facie* case of retaliation, her claims under either Title VII or § 1981 are analyzed according to the *McDonnell Douglas* burden-shifting framework. *See Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 192-93 (3d Cir. 2015); *Stewart v. Rutgers, State Univ.*, 120 F.3d 426, 431-32 (3d Cir. 1997); *Roscoe v. Watco Cos., LLC*, 2016 U.S. Dist. LEXIS 175588, *21 (E.D. Pa. Dec. 16, 2016). Once the District provides legitimate, non-retaliatory reasons for its action, the burden shifts back to Mary, who must demonstrate, by the preponderance of the

evidence, that the District's proffered reasons were merely pretextual. *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500-01 (3d Cir. 1997).

Mary contends that the protected conduct alleged is based on complaints of discrimination made by Lawrence at the August, 2014, meeting with Washington, Pfister and King. *See* Brief in opposition p. 8. Two (2) months later, in October, 2014, Mary was again passed over when the District hired four additional full-time custodians. Mary argues that the "extremely close proximity" in time between her protected activities and the adverse employment decision, establishes causation.

Temporal proximity provides an evidentiary basis from which an inference of causation can be drawn. *See Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 260 (3d Cir. 2017). The Third Circuit has held that, on its own, an intervening temporal period of two days may raise the inference of causation but that a period of two months cannot. *See Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989); *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 759-760 (3d Cir. 2004).

The Court, however, finds that such an analysis in this instance is an exercise in futility. Even assuming that Mary can establish a *prima facie* case of retaliation, this Court has already found that the District had a legitimate nondiscriminatory reason for its employment decisions, and that Mary is unable to show pretext. Accordingly, Mary's retaliation claims under Title VII and § 1981 fail as well.

## V. CONCLUSION

The Court finds that there are no material facts in dispute, Mary is unable to show that that the District violated her rights under Title VII or § 1981. Accordingly, the District's motion for summary judgment shall be granted. An appropriate order will follow.

s/ DAVID STEWART CERCONE
David Stewart Cercone
United States District Judge

cc: Erik M. Yurkovich, Esquire
    Anthony Sanchez, Esquire
    Christina L. Lane, Esquire

    (Via CM/ECF Electronic Mail)